IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SOUTHERNCARE, INC.** d/b/a GENTIVA                                                            **PLAINTIFF**

vs.                                                                            CIVIL ACTION No.: 3:24-CV-347-HTW-LGI

**AMANDA HOLLINGSWORTH** and
**STA-HOME HOSPICE OF MISSISSIPPI, INC.**
d/b/a ACCENTCARE HOSPICE &
PALLIATIVE CARE OF MISSISSIPPI                                                **DEFENDANTS**

**AMANDA HOLLINGSWORTH**                                                      **COUNTER-PLAINTIFF**

vs.

**SOUTHERNCARE, INC.** d/b/a GENTIVA                                      **COUNTER-DEFENDANT**

**ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS**

This dispute concerns Plaintiff/Counter-Defendant SouthernCare, Inc. d/b/a Gentiva ("Gentiva"), a hospice-care provider, and Defendant/Counter-Plaintiff Amanda Hollingsworth ("Hollingsworth"), a former Gentiva employee, regarding her departure from Gentiva and subsequent employment for Defendant Sta-Home Hospice of Mississippi, Inc. d/b/a AccentCare Hospice & Palliative Care of Mississippi ("AccentCare"). Gentiva has moved to dismiss Hollingsworth's counterclaims against Gentiva. ECF No. 11. Because Hollingsworth has pled facts, which, if true, state a plausible claim to relief as to some of her counterclaims, but not others, this Court **grants-in-part** and **denies-in-part** this motion.

**I.   BACKGROUND**

Gentiva is a large hospice-care provider, with several branch locations in the State of Mississippi. In April 2023, Hollingsworth applied for, and was offered, employment with Gentiva

as a Hospice Care Consultant. The written job offer stated it was for "at will" employment and was "contingent upon," among other things, Hollingsworth's signature on a Noncompetition, Non-solicitations, and Confidentiality Agreement ("the Agreement"). The Agreement itself stated that the covenants in the Agreement were to be "essential elements" of Hollingsworth's "at-will employment" with Gentiva. Hollingsworth marked "check boxes" electronically to sign the written job offer and the Agreement. She began work for Gentiva in May 2023.

In February 2024, Hollingsworth resigned from Gentiva. She then joined AccentCare—which Gentiva sees as a competitor—again as a Hospice Care Consultant. Gentiva contacted Hollingsworth and AccentCare, contending that Hollingsworth was violating restrictive covenants in the Agreement. Receiving no response to its communications, Gentiva filed suit against Hollingsworth and AccentCare in this Court. Gentiva alleges that it invested in Hollingsworth's training and shared a variety of valuable confidential information. Gentiva's claims include a breach of contract claim against Hollingsworth and unfair competition claims against AccentCare.

Hollingsworth countersued Gentiva, claiming that during her employment:

> Gentiva personnel obstructed her efforts to perform her duties and to grow the business and created a hostile work environment and failed to ever provide her with business strategies, methods, or confidential information. Gentiva personnel were resistant to Hollingsworth's efforts to have patients admitted and Hollingsworth was ostracized by Gentiva personnel for attempting to perform her duties. This treatment, harassment, and resulting toxic work environment constituted bad faith, made Hollingsworth's employment with Gentiva intolerable, and left Hollingsworth no choice but to leave Gentiva and seek employment elsewhere, effectively constructively discharging her.

ECF No. 7 at 16–17. Hollingsworth also argues that Gentiva cannot assert the Agreement against her, inter alia, because a Gentiva employee reportedly told her that: the Agreement was not valid; it would not be enforced; "there was enough hospice work for everyone;" and the Agreement "was not worth the paper it was written on." *Id.* at 17. Hollingsworth brings counts for breach of

contract, bad faith and the breach of the covenant of good faith and fair dealing, detrimental reliance, constructive discharge, intentional infliction of emotional distress, and tortious interference with contract/business relations.

## II.  DISCUSSION

### A. Jurisdiction

At the outset, this Court first looks to whether it may hear this matter because "federal courts are courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress." *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010) (internal quotations omitted); *see also* U.S. CONST. art. 3, § 2.

Specifically, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States"—also called "diversity jurisdiction." 28 U.S.C. § 1332(a). Diversity jurisdiction requires "complete diversity"—that is, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968)). "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

This Court presently finds exercise of diversity jurisdiction appropriate. According to the pleadings, the plaintiff, Gentiva, is a Delaware corporation with its principal place of business in the State of Georgia; the first defendant, Hollingsworth, is a resident citizen of the State of Mississippi; and the second defendant, AccentCare, is a Mississippi corporation with its principal place of business in the State of Texas. Complete diversity, therefore, exists. Further, the parties assert that the amount in controversy is over $75,000, excluding interests and costs.

### B. Dismissal

1. <u>Legal Standard</u>

This Court dismisses a pleading under Rule 12(b)(6) of the Federal Rules of Civil Procedure where the pleading "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" such that a court could draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

2. <u>Choice of Law</u>

Generally, under diversity jurisdiction, federal courts apply substantive law of the forum state—here Mississippi's—and federal procedural law. *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (citing *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 426–27 (1996)). One of the contracting parties to the Agreement, in this case, is a citizen of states outside the State of Mississippi. This Court, thus, examines whether it should apply the contract law of a different state in adjudicating this dispute, or interpreting the Agreement.

The State of Mississippi, the present forum, dictates the choice-of-law for interpreting a contract. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016). Mississippi's "general rule is that courts will give effect to an express agreement that the laws of a specified jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." *Miller v. Fannin*, 481 So. 2d 261, 262 (Miss. 1985); *Daniels v. Crocker*, 235 So. 3d 1, 7 (Miss. 2017).

The Agreement includes a provision that it "shall be governed by and construed in accordance with the laws of the state in which [Hollingsworth] was last regularly assigned to work for [Gentiva]." ECF No. 1-2 at 9. Hollingsworth regularly worked at Gentiva's "Newton, Mississippi, location." ECF No. 1 at 3; ECF No. 7 at 2. Both parties to this motion urge application of Mississippi law in their briefs, and neither asserts that the law of a different State should apply. This Court, then, for the purposes of this motion, will apply Mississippi contract law.

3. Analysis

**Breach of Contract.** Under Mississippi law, a "breach-of-contract case has two elements: (1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'" *Maness v. K & A Enters. of Mississippi, LLC*, 250 So. 3d 402, 414 (Miss. 2018).[1] Gentiva contends that Hollingsworth did not allege sufficient facts to show that Gentiva broke or breached the Agreement, arguing that Hollingsworth only pled a "conclusory statement" that Gentiva "fail[ed] to fulfill its promises." ECF No. 12 at 4. In response, Hollingsworth points out that she "specifically alleged that Gentiva failed to provide her with business strategies, methods, or confidential information as required by the Agreement." ECF No. 14 at 3.[2]

---

[1] (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So.3d 1221, 1224 (Miss. 2012)) and noting that, according to *Banks*, "[m]onetary damages are not an element of a breach-of-contract claim, but a remedy for breach of contract."

[2] Gentiva insists that Hollingsworth cannot plausibly allege that Gentiva failed to provide her these things (pointing to its own complaint, which alleged contrarily). For her part, Hollingsworth admits, in her answer, that Gentiva paid for her travel to "general training provided to all newly hired employees," but denies "all remaining conclusions, allegations, and implications," which this Court thinks would include Gentiva's characterizations that this training provided the protected information Hollingsworth believes was promised to her. ECF No. 7 at 3. She also then claims that Gentiva personnel "failed … ever [to] provide her with business strategies, methods, or confidential information." *Id.* This Court, on a motion to dismiss, accepts Hollingsworth's well-pled allegations as true and does not resolve disputes of fact.

Hollingsworth's theory is interesting—she apparently construes the Agreement as a contract wherein Gentiva promises Hollingsworth business strategies, methods, or confidential information in exchange for Hollingsworth's avoidance of unfair competition and her discretion. Hollingsworth seemingly interprets receiving these things as contractual consideration to which she is entitled. This Court notes that the Agreement, on the other hand, seems to contemplate Hollingsworth's benefit, in signing, to be gaining employment with Gentiva.[3] This Court, though, without endorsing the ultimate propriety of Hollingsworth's theory, declines to reject it without further briefing and evidence. As of now, this Court finds Hollingsworth's breach of contract allegations as sufficient at least to defeat this Rule 12(b)(6) motion.

Gentiva also argues that "Hollingsworth obviously cannot establish the first essential element of her claim: 'the existence of a valid and binding contract,'" because she concurrently contends that the Agreement is not valid or binding. ECF No. 12 at 5. While at some point, Hollingsworth might have to stick to a lane regarding her theory in this litigation, at the pleading stage, it is not necessarily uncommon nor improper for a party to plead alternative or contingent legal theories.[4] Hollingsworth, indeed, cautioned that she asserts breach of contract only "[t]o the extent a valid and binding contract existed." ECF No. 7 at 17.

**Bad Faith/Breach of the Covenant of Good Faith and Fair Dealing.** Generally, under Mississippi law, "contracts contain an implied duty of good faith and fair dealing." *Young v. N.*

---

[3] This Court does not herein decide whether this constitutes sufficient consideration to render the Agreement valid and enforceable. This question is for later resolution and debate with references to Mississippi law. *See Raines v. Bottrell Ins. Agency, Inc.*, 992 So. 2d 642, 646 (Miss. Ct. App. 2008) (discussing Mississippi jurisprudence on a related issue).

[4] *See, e.g.*, *Adria MM Prods., Ltd. v. Worldwide Ent. Grp., Inc.*, No. 17-21603-CIV, 2019 WL 861479, at *1–2 (S.D. Fla. Feb. 22, 2019) (The plaintiff "claim[ed] that the [agreement at issue] was void for fraud or, in the alternative, had been breached." The defendant countersued, including for breach of contract. The court allowed the plaintiff's alternative claims to go to jury verdict.).

*Mississippi Med. Ctr.*, 783 So. 2d 661, 663 (Miss. 2001).  A breach thereof flows from a "tortious breach of contract." *Lippincott v. Mississippi Bureau of Narcotics*, 856 So. 2d 465, 468 (Miss. Ct. App. 2003) (citing *Braidfoot v. William Carey College*, 793 So. 2d 642, 651 (Miss. Ct. App. 2000). "The breach of good faith is bad faith," which is "characterized by some conduct which violates standards of decency, fairness, or reasonableness." *Univ. of S. Mississippi v. Williams*, 891 So. 2d 160, 170 (Miss. 2004) (quoting *Cenac v. Murry,* 609 So. 2d 1257, 1272 (Miss. 1992)).  Bad faith "implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *Lippincott*, 856 So. 2d at 468 (citing *Cenac,* 609 So. 2d at 1272; *Bailey v. Bailey,* 724 So. 2d 335, 338 (Miss. 1998)).

     Gentiva points out that the Mississippi Supreme Court "specifically [has] held that at-will employment relationships are not governed by a covenant of good faith and fair dealing which gives rise to a cause of action for wrongful termination." *Young v. N. Mississippi Med. Ctr.*, 783 So. 2d 661, 663 (Miss. 2001) (citing *Hartle v. Packard Elec.*, 626 So.2d 106, 110 (Miss. 1993)). Hollingsworth responds that her claim flows from the breach of the Agreement, rather than the at-will employment relationship.  Gentiva counters that the Agreement characterized itself as an "essential element" of the at-will employment relationship.

     This Court need not resolve this debate, because it finds that Hollingsworth's countercomplaint insufficiently pleads bad faith.  This count, then, must be **dismissed**. Hollingsworth vaguely pleads that Gentiva personnel "obstructed her efforts to perform her duties and to grow the business;" "failed to ever provide her with business strategies, methods, or confidential information;" "were resistant to Hollingsworth's efforts to have patients admitted;" and "ostracized" Hollingsworth. ECF No. 7 at 16–17.  Without further information on these points, Hollingsworth cannot show that Gentiva's conduct rose to the level of an intentional tort.  The

United States Supreme Court has explained that, while pleadings do not require "detailed factual allegations," there must be more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). Hollingsworth's remaining allegations are essentially conclusory legal pronouncements (that Gentiva acted in "bad faith," created a "hostile work environment," caused "harassment," made work so "intolerable" that her resignation was a "constructive discharge," etc.). This Court need not accept as true such "legal conclusion[s] couched as … factual allegation[s]." *Id.* (internal quotation omitted).

The counterclaims for **Intentional Infliction of Emotional Distress** and **Tortious Interference with Contract/Business Relations** likewise must be **dismissed**, as each requires Hollingsworth to establish an element of bad faith or tortious conduct, which Hollingsworth has not plausibly alleged.[5] This Court must also **dismiss** Hollingsworth's **Constructive Discharge**

---

[5] *See Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004) ("[T]o prevail on a claim of intentional infliction of emotional distress," the claimant must show the tortfeasor's "conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency;" and it is unusual for "mere employment disputes" to rise to that standard.); *Cenac*, 609 So. 2d at 1269, 1271 (Miss. 1992) (Tortious interference with contracts requires that the tortfeasor "maliciously interferes in a contract between two parties" (and must be a "stranger" to the contract); and tortious interference with business relations requires that the tortfeasor "engages in some act with a malicious intent to interfere and injure the business of another").

Hollingsworth also apparently pleads "interference with business relations" on the basis that Gentiva sent AccentCare letters with its accusations of Hollingsworth's violation of the agreement (and filed this suit). Her factual allegations are insufficient to show that these letters were sent maliciously, or that they ultimately injured her business relations with AccentCare. Hollingsworth even pled that she was "without sufficient information to admit or to deny whether AccentCare received such a letter." ECF No. 7 at 6. AccentCare's counsel also is representing Hollingsworth in this matter.

counterclaim, because Hollingsworth's allegations regarding the workplace conditions which supposedly forced her to resign are too vague and conclusory to be actionable.[6]

**Detrimental Reliance/Estoppel.** "Detrimental reliance," in Mississippi, is merely an element of other causes of action, including "equitable estoppel." *Boyanton v. Bros. Produce, Inc.*, 312 So. 3d 363, 378 (Miss. Ct. App. 2020). The elements for equitable estoppel are "(1) that [the claimant] has changed [her] position in reliance upon the conduct of another and (2) that [she] has suffered detriment caused by [her] change of [her] position in reliance upon such conduct." *Id.* (quoting *Turner v. Terry*, 799 So. 2d 25, 37 (¶42) (Miss. 2001)). Said reliance must be "reasonable." *Id.* (citing *Trosclair v. Miss. Dep't of Transp.*, 757 So. 2d 178, 181 (¶13) (Miss. 2000)). Hollingsworth claims that she meets these elements (and merely misnamed her counterclaim), so this Court will consider whether she adequately pled equitable estoppel.

Hollingsworth claims to have "reasonably relied" on the Gentiva employee reportedly telling her that the Agreement was not valid and would not be enforced as she departed Gentiva's employ. ECF No. 7 at 18. Her supposed detriment is suffering this lawsuit. Gentiva argues Hollingsworth's reliance on the alleged statement of its employee could not have been "reasonable"—because the Agreement contains a clause prohibiting "waiv[er]" absent a "writing signed by Employee and an authorized officer of Company specifically designated by the Board."

---

[6] *See Cothern v. Vickers, Inc.*, 759 So. 2d 1241, 1246 (Miss. 2000) ("[A] constructive discharge may be deemed to have resulted when the employer made conditions so intolerable that the employee reasonably felt compelled to resign." (quoting *Bulloch v. City of Pascagoula*, 574 So. 2d 637, 640 (Miss. 1990)).

Hollingsworth cites this Court's opinion in *Edwards v. Canton Public School District*, for the proposition that "the question of whether a plaintiff was constructively discharged, is question of fact 'to be proved at trial.'" ECF No. 14 at 6 (quoting No. 3:19-CV-469-HTW-LGI, 2024 WL 3641743, at *5 (S.D. Miss. Aug. 2, 2024)). In *Edwards*, though, this Court first found that the complaint had not "fail[ed] to state a claim upon which relief can be granted," before determining the claim could proceed towards trial. *Id.* This Court, here, does not make that finding.

ECF No. 1-2 at 910. This provision of the Agreement does not operate to make Hollingsworth's allegation of "reasonable" reliance implausible, though; if she had been told that the Agreement itself was "not valid," a provision *within* that supposedly invalid contract would not necessarily give her pause. The employee who purportedly made this statement was a man whom Gentiva has admitted was the "Assistant Vice President of Business Development and [Hollingsworth's] supervisor at Gentiva." *Compare* ECF No. 1 at 7, *with* ECF No. 7 at 3. Hollingsworth could argue that it was reasonable to rely on someone with that level of authority. This Court, therefore, declines to dismiss Hollingsworth's estoppel claim at this stage.

### III.    CONCLUSION

**IT IS ORDERED** that ECF No. 11, Gentiva's motion to dismiss, is **GRANTED-IN-PART** and **DENIED-IN-PART**. Hollingsworth's counterclaims for bad faith/breach of the covenant of good faith and fair dealing, constructive discharge, intentional infliction of emotional distress, and tortious interference with contract/business relations are **DISMISSED WITH PREJUDICE**, while those for breach of contract and equitable estoppel survive.

SO ORDERED AND ADJUDGED this the  31st  day of      March     , 2025.

/s/ HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**